UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | |
|---|---|
| COUNTRY INNS & SUITES BY CARLSON, INC., | No. 13-cv-3381 (PJS/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| PRAESTANS ONE, L.L.C.; SANJAY M. AMIN; NAYANESH P. AMIN; RAMESH JOSHI; PREM P. AGARWAL; VIJAY MODI; and NARESH AMIN, | |
| Defendants. | |

---

This matter came before the undersigned United States Magistrate Judge upon the following Motions: Defendant Ramesh Joshi's Motion to Dismiss, [Docket No. 36]; Defendant Vijay Modi's Motion to Dismiss, [Docket No. 37]; and Defendant Sanjay M. Amin's Motion to Dismiss, [Docket No. 40] (collectively, the "Motions to Dismiss").  The Motions have been referred to the undersigned Magistrate Judge for a report and recommendation, (Order [Docket No. 24] (referring all dispositive and non-dispositive motions)), pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.  For reasons set forth below, this Court recommends that the Motions to Dismiss, [Docket Nos. 36, 37, and 40], be **DENIED**.

## I.    BACKGROUND

Country Inns & Suites by Carlson, Inc. ("Plaintiff"), initiated this breach of contract action on December 9, 2013, by filing its complaint, [Docket No. 1], and various Exhibits thereto, [Docket Nos. 1-1—1-2].  The named defendants are Praestans One, L.L.C. ("Defendant Praestans" or the "LLC"), and the LLC's members: Sanjay M. Amin ("Defendant S.Amin"),

1

Nayanesh P. Amin ("Defendant N.P.Amin"), Ramesh Joshi ("Defendant Joshi"), Prem P.

Agarwal ("Defendant Agarwal"), Vijay Modi ("Defendant Modi"), and Naresh Amin

("Defendant N.Amin").[1]   On January 31, 2014, Plaintiff obtained a Clerk's Entry of Default

against Defendant Praestans and Defendant N.Amin.  [Docket No. 20].[2]  Subsequently, on

March 18, 2014, Defendant N.P.Amin was dismissed from the case for Plaintiff's failure to

prosecute its case against him, (Report & Recommendation [Docket No. 38] (recommending

dismissal of Defendant N.P.Amin); Order [Docket No. 43] (adopting R&R)); and on May 27,

2014, Defendant Agarwal was dismissed pursuant to a stipulation, (Stip. [Docket No. 47]; Order

of Dismissal [Docket No. 49] (dismissing Defendant Agarwal with prejudice)).[3]

Meanwhile, the Moving Defendants responded to the Complaint by moving to dismiss:

Defendant Joshi on February 25, 2014 (Def. Joshi's Mot. Dismiss [Docket No. 36]); Defendant

Modi also on February 25, 2014 (Def. Modi's Mot. Dismiss [Docket No. 37]); and Defendant

S.Amin on February 28, 2014 (Def. S.Amin's Mot. Dismiss [Docket No. 40]).[4]  Plaintiff filed its

joint Response to these three Motions on March 27, 2014.  (Pl.'s Joint Resp. to Defs. Joshi's,

Modi's, and S.Amin's Mots. Dismiss [Docket No. 44] ("Plaintiff's Response")).  The Moving

---

[1] For purposes of this Report and Recommendation:
- The term "Individual Defendants" refers collectively to all six of the LLC's members: Defendant S.Amin, Defendant N.P.Amin, Defendant Joshi, Defendant Agarwal, Defendant Modi, and Defendant N.Amin;
- The term "Defendants" refers collectively to the LLC and the Individual Defendants; and
- The term "Moving Defendants" refers collectively only to the three Individual Defendants who made the present Motions to Dismiss: Defendant Joshi, Defendant Modi, and Defendant S.Amin; it does not include Defendant Praestans, Defendant Agarwal, Defendant N.P.Amin, or Defendant N.Amin.

[2] The Clerk also entered default as to Defendant Joshi and Defendant Modi.  (Clerk's Entry of Default [Docket No. 20].  However, Defendant Joshi and Defendant Modi subsequently responded to the Complaint by filing their present Motions to Dismiss, [Docket Nos. 36 and 37, respectively].
   On June 2, 2014, Plaintiff made a Motion for Default Judgment against Defendant Praestans and Defendant N.Amin.  [Docket No. 50].  This Court is scheduled to hear argument on that Motion on July 15, 2014.

[3] Defendant Agarwal had previously, on February 5, 2014, made his own Motion to Dismiss.  [Docket No. 22].  That Motion was rendered moot by his dismissal from the case on May 27, 2014.  (See Order of Dismissal [Docket No. 49]).

[4] For purposes of this Memorandum, the term "Motions to Dismiss" refers collectively to the Moving Defendants' Motions, [Docket Nos. 36, 37, and 40].  Because the Moving Defendants make substantially the same arguments, this Memorandum cites only to Defendant Joshi's Motion, [Docket No. 36].

Defendants set forth their arguments within their respective Motions, but none of them filed a separate memorandum in support of their motion, none filed a reply to Plaintiff's Responses, and none appeared at the May 20, 2014, motions hearing.

## II.   FACTS[5]

Plaintiff is a corporation organized under Minnesota law, and with its principal place of business in Minnesota.  (Compl. [Docket No. 1], at ¶ 1).  Defendant Praestans is a Virginia LLC with its principal place of business in Chesapeake, Virginia, (Id. at ¶ 3); and the Individual Defendants are citizens of Virginia.

In March 2005, Plaintiff entered a license agreement with Defendant Praestans authorizing the LLC to build and operate a hotel under Plaintiff's trademarks.  (Compl. [Docket No. 1], at ¶ 14; Pl.'s Ex. A [Docket No. 1-1] (hereinafter, the "License Agreement").  Among the relevant terms of the License Agreement are the following:

> 25.3   <u>Governing Law</u>.   The interpretation, validity and enforcement of this Agreement and the relationship between the parties is subject to and governed by the laws (statutory or otherwise) of the state in which the Hotel is located or to be located except those with respect to choice of law or conflict of law.   Licensee waives the rights and protections that may be provided through the franchise, business opportunity or other laws of any state other than the state in which the Hotel is located.
>
> 25.4   <u>Venue and Jurisdiction</u>.   Except for injunctive relief sought by Country, which Country has the right to bring in a court of competent jurisdiction in the

---

[5] When deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court considers "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." <u>PureChoice, Inc. v. Macke</u>, No. 07-cv-1290 (DWF/SRN), 2007 U.S. Dist. LEXIS 50284, at *13 (D. Minn. July 10, 2007) (Frank, J.) (citing <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999)).   "[F]or the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true . . . ." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

However, as set forth in Part III.A.1, <u>infra</u>, when a defendant moves to dismiss pursuant to Rule 12(b)(3) alleging improper venue, that defendant must demonstrate that venue is improper.   Accordingly, "the defendant must submit affidavits or other evidence defeating venue in the chosen forum." <u>Advanced Logistics Consulting, Inc. v. C. Enyeart LLC</u>, No. 09-cv-720 (RHK/JJG), 2009 U.S. Dist. LEXIS 50603, at *4-5 (D. Minn. June 16, 2009) (Kyle, J.) (citing, <i>inter alia</i>, <u>Freeman v. Fallin</u>, 254 F. Supp. 2d 52, 56 (D.D.C. 2003)).   Therefore, "the Court may consider matters beyond the pleadings when ruling on a motion to dismiss for improper venue." <u>Id.</u> (collecting cases).

> state where (i) Licensee resides or has its principal place of business, or (ii) the Hotel is located, all Claims arising out of or related to this Agreement in any way, must be commenced, filed and litigated before a court of competent jurisdiction located in Hennepin County, Minnesota or the City of Chesapeake, Virginia. Licensee and Country submit to personal jurisdiction in the state and Federal courts in such county and city for such purpose.

(License Agreement [Docket No. 1-1], at §§ 25.3-25.4).  The License Agreement also provides that claims arising from the License Agreement must be brought no later than 1 year after the termination or expiration of the License Agreement:

> 25.6   Claims.   Except for those Claims that are brought pursuant to the indemnification or insurance coverage required under Articles 21 and 22, upon expiration or termination of this Agreement, neither party will commence any cause of action related to or arising out of this Agreement, unless commenced within one year following the effective date of expiration or termination.

(Id. at § 25.6).  Finally, as relevant to the present Motions, the License Agreement provides that a prevailing party shall pay the other party's attorneys' fees:

> 25.13   Attorneys' Fees.   All reasonable and necessary costs and expenses, including attorneys fees, incurred by Country or Licensee in enforcing any provisions of this Agreement, or in defending any Claims made against one by the other with respect to this Agreement, whether through injunctive relief or otherwise, will be paid to the prevailing party in such action by the other party.

(Id. at § 25.13).

Also in March 2005, Plaintiff and all of the Individual Defendants, "[t]o induce [Plaintiff] to enter into the License Agreement . . . with [Defendant Praestans], . . . and for other good and valuable consideration," entered into a Personal Guaranty of License Agreement.  (Compl. [Docket No. 1], at ¶ 15; Pl.'s Ex. B [Docket No. 1-2], at 1-3 (hereinafter, the "Guaranty").[6]  All six of the Individual Defendants signed the Guaranty as a "Guarantors."  (Guaranty [Docket No. 1-2], at 2-3).  As relevant to the present Motions to Dismiss, the Guaranty provides:

---

[6] Plaintiff's Exhibit B actually contains two copies of the Guaranty, one signed and executed by Defendants S.Amin, N.P.Amin, and Joshi, (Guaranty [Docket No. 1-2], at 2); and one signed and executed by Defendants Agarwal, N.Amin, and Modi, (Guaranty [Docket No. 1-2], at 3).  In the interest of efficiency, for the substance of the Guaranty this Memorandum cites only to Page 2, as it appears in the CM/ECF.  (Guaranty [Docket No. 1-2], at 2).

Guarantors, jointly and severally, absolutely, irrevocably and unconditionally, promise and guaranty to Country, that Guarantors will: a) make the full and prompt payment to Country and its Affiliates when due, of all fees, charges, Payments, and amounts due or payable to Country and its Affiliates under the License Agreement and any amendments thereto, or which arise out of or are related to the License Agreement or any amendments, including all interest thereon (all of said fees, charges, Payments, amounts, and interest called the "Indebtedness"); and b) upon termination or expiration of the License Agreement, timely perform all of Licensee's obligations under Article 19 of the License Agreement, the contents of which are incorporated herein by reference.

No act or thing need occur to establish the liability of Guarantors and no act or thing (including, but not limited to: a discharge in bankruptcy of the Indebtedness, the running of the applicable statute of limitations, release, compromise or adjustment with Licensee or any Guarantors) which, but for this provision could act as a release of the liabilities of Guarantors hereunder, shall in any way exonerate or release Guarantors or affect, impair, reduce or release this Guaranty and the liability of Guarantors hereunder; and this shall be a continuing, absolute and unconditional Guaranty and shall be in force and be binding upon Guarantors until the Indebtedness has been fully paid and all guaranteed obligations have been completed.

(Id. at 2). Additionally, the Guaranty expressly states that certain sections of the License Agreement "apply to the Guarantors and this Guaranty," including Sections 25.3 (Governing Law), 25.4 (Venue and Jurisdiction), and 25.13 (Attorneys' Fees). (Guaranty [Docket No. 1-2], at 2).

The hotel which is the subject of the License Agreement and the Guaranty was not successful, and Defendant Praestans fell behind on various payments required under the License Agreement. (Compl. [Docket No. 1], at ¶ 25). On March 6, 2009, Defendant Praestans entered into a promissory note[7] with Plaintiff to arrange a payment plan. (Id.). Subsequently, on October 8, 2010, Plaintiff advised Defendant Praestans that it was in default of both the License Agreement and the promissory note. (Id. at ¶ 26; Pl.'s Ex. C [Docket No. 1-2], at 4-8 (hereinafter, the "Notice of Monetary Default")). Over the ensuing two years, the parties

---

[7] The promissory note does not appear as an exhibit to the Complaint, and neither Plaintiff nor Defendants have submitted a copy to the Court for purposes of the present Motions.

negotiated "numerous" extensions of Defendant Praestans's deadline to cure the default, but Defendant Praestans never fully cured.  (Compl. [Docket No. 1], at ¶ 27; see also Pl.'s Ex. D [Docket No. 1-2], at 9-13) (hereinafter, the "October 23, 2013, Notice of Extension")).  The October 23, 2013, Notice of Extension provided that if Defendant Praestans failed to cure the outstanding defaults by November 30, 2012, then the License Agreement would terminate effective December 12, 2012.  (Oct. 23, 2012, Notice of Extension [Docket No. 1-2], at 11).  On December 5, 2012, Plaintiff again served Defendant Praestans with a further Notice of Extension.  (Compl. [Docket No. 1], at ¶ 28; Pl.'s Ex. E [Docket No. 1-2], at 14-18 (hereinafter, the "December 5, 2013, Notice of Extension")).  In this Notice, Plaintiff advised that the License Agreement would not terminate on December 12, 2012, but that failure to cure the default by January 4, 2013, would result in termination of the License Agreement on January 16, 2013. (Dec. 5, 2012, Notice of Extension [Docket No. 1-2], at 15-16).

Subsequently, on December 17, 2012, Defendant Praestans transferred the hotel pursuant to a substitute trustee's auction.  (Compl. [Docket No. 1], at ¶ 29).  Two days later, on December 19, 2012, Plaintiff advised Defendant Praestans that their transfer of the hotel violated the License Agreement because it was made without Plaintiff's consent, and that because of the aforementioned default and the transfer of the hotel, Plaintiff was terminating the License Agreement as of December 20, 2012.  (Id. at ¶ 30; Pl.'s Ex. F [Docket No. 1-2], at 20-33 (hereinafter, the "Notice of Default and Termination")).  The Notice of Default and Termination advised Defendant Praestans that it still owed Plaintiff $55,719.41 as of the December 20, 2012, termination date, plus an additional $173,799.28 in liquidated damages due within 10 days of the termination date.  (Compl. [Docket No. 1], at ¶¶ 31-32; Notice of Default and Termination [Docket No. 1-2], at 21-22).  Consequently, the Lease Agreement was terminated on December

20, 2012.  (Compl. [Docket No. 1], at ¶ 51).  Since then, Plaintiff made demands for payment at

least twice, but neither Defendant Praestans nor any of its individual members has paid off the

past-due fees and liquidated damages.  (Compl. [Docket No. 1], at ¶¶ 33-35; Pl.'s Exs. G-H

[Docket No. 1-2], at 34-40 (demands for payment dated Jan. 23, 2013, and Apr. 22, 2013)).

On December 9, 2013, Plaintiff filed the present Complaint, which alleges against all

Defendants three breach of contract claims, each alleging breach of the License Agreement and

the Guaranty, for: Count I, failure to pay past due fees, (Compl. [Docket No. 1], at ¶¶ 36-44);

Count II, failure to pay liquidated damages, (Id. at ¶¶ 45-53); and Count II, attorneys' fees, (Id. at

¶¶ 54-57).


### III.     MOTIONS TO DISMISS [Docket Nos. 36, 37, and 40]

Although the Moving Defendants each filed separate Motions to Dismiss, all three of

their Motions advance the very same arguments which are addressed below.

The Moving Defendants do not identify which of the Federal Rules of Civil Procedure

serves as the basis for their Motions.  Because the Moving Defendants are proceeding *pro se*, the

Court must "liberally construe[]" their Motions to Dismiss.  Erickson v. Pardus, 551 U.S. 89, 94

(2007) ("A document filed *pro se* is 'to be liberally construed,'") (quoting Estelle v. Gamble, 429

U.S. 97, 106 (1976)).  Reading the Motions to Dismiss liberally, this Court construes them as

advancing three arguments in support of dismissal: (A) alleging that this District is not the proper

venue, and seeking dismissal pursuant to Rule 12(b)(3);[8] (B) alleging that Plaintiff has failed to

state a claim upon which relief can be granted, and seeking dismissal pursuant to Rule 12(b)(6);

and (C) alleging that Plaintiff failed to join a necessary party under Rule 19, and seeking

---

[8] This portion of the Motions to Dismiss could also be construed as a motion to transfer pursuant to 28 U.S.C. § 1404(a).  See Part III.A.2.b, infra.

dismissal pursuant to Rule 12(b)(7).

**A. Venue is proper in this District.**

**1. Standard of Review**

The U.S. Code provides that: "The district court of a district in which is filed a case

laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice,

transfer such case to any district or division in which it could have been brought."  28 U.S.C. §

1406(a).  A defendant who believes that a case has been filed in the wrong division may move to

dismiss on the basis of "improper venue."  Fed. R. Civ. P. 12(b)(3).

In most cases, 28 U.S.C. § 1391 governs venue in the United States District Courts.[9]

That statute provides:

> **(b) Venue in General.**— A civil action may be brought in—
> **(1)** a judicial district in which any defendant resides, if all defendants are
> residents of the State in which the district is located;
> **(2)** a judicial district in which a substantial part of the events or omissions
> giving rise to the claim occurred, or a substantial part of property that is the
> subject of the action is situated; or
> **(3)** if there is no district in which an action may otherwise be brought as
> provided in this section, any judicial district in which any defendant is subject
> to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  "When venue is challenged, the court must determine whether the case

falls within one of the three categories set out in § 1391(b).  If it does, venue is proper; if it does

not, venue is improper, and the case must be dismissed or transferred under § 1406(a)."  Atl.

Marine Constr. Co. v. U.S. Dist. Ct. for the W.D. Texas, ___ U.S. ___,[10] 134 S. Ct. 568, 577

(2013).  "When a defendant seeks dismissal for improper venue under Rule 12(b)(3) . . . it bears

the burden of demonstrating that the plaintiff's chosen venue lacks a sufficient connection to the

---

[9] "Section 1391 governs 'venue generally,' that is, in cases where a more specific venue provision does not apply.
Cf., e.g., § 1400 (identifying proper venue for copyright and patent suits).  Atl. Marine Constr. Co. v. U.S. Dist. Ct.
for the W.D. Texas, 134 S. Ct. 568, 577 n.2 (2013).

[10] U.S. Reporter pagination not yet available.

parties' dispute."  Advanced Logistics Consulting, Inc. v. C. Enyeart LLC, No. 09-cv-720

(RHK/JJG), 2009 U.S. Dist. LEXIS 50603, at *4-5 (D. Minn. June 16, 2009) (Kyle, J.) (citing

United States v. Orshek, 164 F.2d 741, 742 (8th Cir. 1947)).[11]

### 2. Discussion

#### a. With respect to their argument concerning venue, the Motions to Dismiss are procedurally improper.

The Moving Defendants cite to Section 25.4 of the License Agreement for the

proposition that the License Agreement "provides for jurisdiction and venue of Courts in the city

of Chesapeake, Virginia," and therefore, the Moving Defendants "request[] dismissal for lack of

jurisdiction and improper venue."  (Def. Joshi's Mot. Dismiss [Docket No. 36], at 2).  This Court

construes this part of the Motions to Dismiss as alleging improper venue pursuant to Rule

12(b)(3), and pursuant to the forum selection clause which appears in the License Agreement and

which is expressly incorporated in the Guaranty.

However, a unanimous U.S. Supreme Court recently held that Rule 12(b)(3) is not the

proper vehicle for enforcing a forum selection clause.  In Atlantic Marine Construction, supra,

the Court held that Rule 12(b)(3) provides for dismissal of an action "only when venue is

'wrong' or 'improper.'"  134 S. Ct. at 577.  "Whether the parties entered into a contract

containing a forum-selection clause has no bearing on whether a case falls into one of the

categories of cases listed in § 1391(b).  As a result, a case filed in a district court that falls within

§ 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3)."  Id.

---

[11] In Advanced Logistics Consulting, Judge Kyle notes that
> There is a circuit split regarding who bears the burden of establishing who bears the burden of establishing the propriety (or lack thereof) of the chosen venue.  Compare, e.g., Orshek and Myers v. Am. Dental Ass'n, 695 F.2d 716, 724-25 (3d Cir. 1982 (defendant's burden) with Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353 (2d Cir. 2005) (plaintiff's burden).  [United States v.] Orshek, however, is controlling here.
2009 U.S. Dist. LEXIS 50603, at *5-6 n.2.

In the present case, the Moving Defendants' only argument that venue is improper arises from their belief that Section 25.4 of the License Agreement provides exclusive jurisdiction and venue in the "Courts in the city of Chesapeake, Virginia."  (Def. Joshi's Mot. Dismiss [Docket No. 36], at 2).  As set forth by the Supreme Court in Atlantic Marine Construction, this is not the proper basis for a motion to dismiss based on venue, and the Moving Defendants offer no argument whatsoever that venue is improper under 28 U.S.C. § 1391.

Moreover, it is obvious that venue *is* proper in this Court.  "[W]hen determining whether dismissal is proper, the Court need not decide that it is the 'best' venue or the one having the most significant connection to the claims at issue."  Advanced Logistics Consulting, 2009 U.S. Dist. LEXIS 50603, at *9 (citing, *inter alia*, Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 563 (8th Cir. 2003)).  Rather, the requirements of 28 U.S.C. § 1391 are met so long as "a substantial part of the events or omissions giving rise to the claim occurred" within this District.  In Advanced Logistics Consulting, this District found that that requirement was met where:

> The Complaint allege[d] that [the defendants] entered into agreements with [the plaintiff], a Minnesota company, . . . .  The Complaint further allege[d] that [the defendants] breached those agreements, . . . .  In light of the importance of those relationships to [the plaintiff's] lawsuit, and the fact that [the plaintiff] is a Minnesota company, the Court concludes that Minnesota has a substantial connection to [the plaintiff's] claims.

2009 U.S. Dist. LEXIS 50603, at *10-11.[12]  The same is true in the present case, where the Complaint alleges that Plaintiff is a Minnesota company, that Defendants entered into agreements with Plaintiff, and that Defendants breached those agreements.  Therefore, as in Advanced Logistics Consulting, venue in this District is proper in the present case.

---

[12] The District Court in Advanced Logistics Consulting further held that:
   [I]t is not dispositive that the specific acts giving rise to [the plaintiff's] claims did not occur in this district. What matters is that there is a substantial connection between this district and [the plaintiff's] claims, because those claims would not exist absent [the defendants'] relationships with [the plaintiff], a Minnesota company.  That is sufficient to establish venue.
2009 U.S. Dist. LEXIS 50603, at *12 (citing Setco Enters. Corp. v. Robbins, 19 F.3d 1278, 1281 (8th Cir. 1994)).

> **b. Additionally, if the Court was to construe the Motions to Dismiss as seeking transfer to the federal courts of Virginia pursuant to 28 U.S.C. § 1404(a), the Moving Defendants have failed to make a showing sufficient to prevail on motions to transfer.**

Although a forum selection cause does not provide grounds for dismissal under either 28 U.S.C. § 1406(a) or Rule 12(b)(3), "the clause may be enforced through a motion to transfer under [28 U.S.C.] § 1404(a)." Atl. Marine Constr., 134 S. Ct. at 579. Section 1404 provides, in relevant part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

The Moving Defendants make no request whatsoever, either express or implied, that this case be transferred to the U.S. District Court for the Eastern District of Virginia.[13] However, were this Court to, in the alternative, read the Motions to Dismiss liberally so as to construe them as seeking transfer to the Eastern District of Virginia, the Moving Defendants have failed to make a sufficient showing to prevail on such a motion.

Courts consider three factors when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997). Additionally, transfer motions "should not be freely granted." In re Nine Mile Ltd., 692 F.2d 56, 61 (8th Cir. 1982), overruled on other grounds, Missouri Housing Dev. Comm'n v. Brice, 919 F.2d 1306, 1310-11 (8th Cir. 1990); Travel Tags, Inc. v. Performance Printing Corp., 636 F. Supp.2d 833, 836 (D. Minn. 2007). "[I]n general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving

---

[13] Defendants do assert that jurisdiction and venue are proper only in the "Courts in the city of Chesapeake, Virginia," and the Court may take judicial notice that Chesapeake is in the Eastern District of Virginia.

that a transfer is warranted." <u>Terra Int'l</u>, 119 F.3d at 695.  The movant faces a "heavy burden" to demonstrate why a motion to transfer venue should be granted.  <u>Radisson Hotels Int'l, Inc. v. Westin Hotel Co.</u>, 931 F. Supp. 638, 641 (D. Minn. 1996).  The movant must show that "the balance of factors **strongly** favors" transfer.  <u>Id.</u> (internal quotation marks omitted) (emphasis in original).  Moreover, 28 U.S.C. § 1404(a) "provides for transfer to a **more** convenient forum, not simply one that is equally convenient to the one originally selected."  <u>Eagle's Flight of Am., Inc. v. Play N Trade Franchise, Inc.</u>, No. 10-cv-1208 (RHK/JSM), 2011 U.S. Dist. LEXIS 1213, 2011 WL 31726, at *4 (D. Minn. 2011) (Kyle, J.) (emphasis in original).

In the present case, neither the language of Section 25.4 of the License Agreement, nor the factors enumerated in 28 U.S.C. § 1404(a), requires transfer.

### (i)  The License Agreement does not require transfer from this District.

A federal court exercising diversity jurisdiction, as this Court does in the present case, "will apply federal law to determine the applicability of a forum selection clause."  <u>Taylor Investment Corp. v. Weil</u>, 169 F. Supp. 2d 1046, 1060 (D. Minn. 2001) (Tunheim, J.).  "[F]orum selection clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.'"  <u>Union Elec. Co. v. Energy Ins. Mut. Ltd.</u>, 689 F.3d 698, 670 (8th Cir. 2012) (quoting <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 10 (1972)).

In the present case, there does not appear to be a dispute as to the *applicability* of the forum selection clause, as both Plaintiff and the Moving Defendants direct the Court to Section 25.4 of the License Agreement.  (<u>Compare</u> Def. Joshi's Mot. Dismiss [Docket No. 36], at 2; <u>with</u> Pl.'s Resp. [Docket No. 44], at 8).  The dispute turns upon the terms of the forum selection clause: the Moving Defendants imply that the clause provides jurisdiction and venue *only* in

Virginia courts, while Plaintiff argues that the plain language of the forum selection clause provides for jurisdiction and venue *either* in Virginia *or* in Minnesota.

Plaintiff is correct. Although Section 25.4 provides that injunctive relief may only be sought in Virginia, it also expressly provides that claims for damages may be brought "before a court of competent jurisdiction located in Hennepin County, Minnesota, **or** the City of Chesapeake, Virginia." (License Agreement [Docket No. 1-1], at ¶ 25.4 (emphasis added)). The Complaint in the present case does not seek injunctive relief, but only damages as the prayed for remedy. Therefore, the forum selection clause—which the Moving Defendants acknowledge governs jurisdiction and venue—expressly states that this Court is a proper forum for Plaintiff's action.

### (ii) The Moving Defendants have not shown that convenience or the interests of justice require transfer.

In making their venue argument, the Moving Defendants note that "[t]he Hotel, all documents, and four of the five guarantors are located in Virginia," and that "[the LLC] and guarantors are facing lenders, vendors, [and] tax claims in Virginia." (Def. Joshi's Mot. Dismiss [Docket No. 36], at 2). This could be liberally construed as an argument for discretionary transfer on the basis of convenience of the parties, pursuant to 28 U.S.C. § 1404(a). However, even if this Court was to construe this paragraph as such a motion, the Moving Defendants have not made the necessary showing to prevail.

As previously noted, a party seeking transfer has a "heavy burden" of showing that transfer is warranted. Terra Int'l, 119 F.3d at 695 (movant's burden); Radisson Hotels, 931 F. Supp. at 641 (describing showing as "heavy burden"). Additionally, "[t]he Supreme Court has emphasized that trial courts must give deference to a plaintiff's forum choice. In [Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947)], the Court stated that 'unless the balance is strongly in favor of

the defendant, the plaintiff's choice of forum should rarely be disturbed." Reid-Walen v. Hansen, 933 F.2d 1390, 1394-95 (8th Cir. 1991) (citing Gilbert, 330 U.S. at 508). Such deference is especially warranted where, as here, a plaintiff has selected its "home forum." Advanced Logistics Consulting, 2009 U.S. Dist. LEXIS 50603, at *17-18 (internal citations omitted).

In the present case, there is no question that transfer to Virginia would be more convenient for Defendants, just as retaining the case in this District would be more convenient for Plaintiff. Facing similar circumstances in Advanced Logistics Consulting, Judge Kyle wrote: "Section 1404(a) . . . provides for transfer to a *more* convenient forum, not one that is equally convenient (or inconvenient) to the forum originally selected. Transfer should not be granted 'if the effect is simply to shift the inconvenience' from one party to the other." 2009 U.S. Dist. LEXIS 50603, at *14 (emphasis in original, and quoting Graff v. Qwest Commc'ns Corp., 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (Doty, J.)).

Additionally, despite their mere statement in their Motions that they "are facing lenders, vendors, [and] tax claims in Virginia," the Moving Defendants have made no factual showing with regard to these issues. See Advanced Logistics Consulting, 2009 U.S. Dist. LEXIS 50603, at *20 ("Defendants have proffered no evidence about their financial strength (or lack thereof), save their bald assertions that litigating in Minnesota 'will likely create a financial hardship.' That is simply not enough" (citation to the record omitted)). Even if the Moving Defendants are "facing lenders, vendors, [and] tax claims in Virginia," they have not demonstrated how those circumstances bear on the issue of convenience; but rather, they have merely made conclusory allegations, which generally are insufficient to make the necessary showing of convenience. See Reid-Walen, 933 F.2d at 1396-97 (defendants failed to make the necessary showing that

convenience of witnesses warranted transfer where they "have not submitted any information or affidavits to support their conclusory allegations").

In <u>Advanced Logistics Consulting</u>, Judge Kyle observed: "In many cases involving a proposed change of venue, there are factors [that] support each side.  That is true here.  There will be some inconvenience to someone no matter where this action is prosecuted."  2009 U.S. Dist. LEXIS 50603, at *21 (alteration in original, and quoting <u>LeMond Cycling, Inc. v. Trek Bicycle Corp.</u>, No. 08-cv-1010 (RHK/JSM), 2008 U.S. Dist. LEXIS 43369, at *12-13 (D. Minn. May 29, 2008) (Kyle, J.)).  The same is true in the present case—the Moving Defendants inevitably will be somewhat inconvenienced if this case remains venued in this District.  However, Plaintiff would also be inconvenienced by a transfer, and the Moving Defendants have not made the sufficiently strong showing to justify such a transfer.

### c.  Summary

For the reasons set forth above, whether this Court construes the Motions to Dismiss as seeking dismissal for improper venue pursuant to Rule 12(b)(3), or as seeking transfer pursuant to 28 U.S.C. § 1404(a), in either case the Moving Defendants have failed to make the necessary showings.  Therefore, this Court recommends that this aspect of the Motions to Dismiss, [Docket Nos. 36, 37, and 40], be **DENIED**.

## B.  Plaintiff has sufficiently stated claims upon which relief can be granted.

### 1.  Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  In addressing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, "we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff."  <u>Riley v. St. Louis County of</u>

Mo., 153 F.3d 627, 629 (8th Cir. 1998), cert. denied 525 U.S. 1178 (1999), citing Double D

Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998).  All reasonable

inferences must be drawn in favor of the nonmoving party.  See Maki v. Allete, Inc., 383 F.3d

740, 742 (8th Cir. 2004).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

requires more than labels and conclusions, and a formulistic recitation of the elements of a cause

of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations

omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged,"

and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009), quoting Twombly, 550 U.S. at 556-67.  "While legal

conclusions can provide the framework of a complaint, they must be supported by factual

allegations."  Id. at 664.

### 2. Plaintiff has stated a claim sufficient to survive Defendants' Rule 12(b)(6) challenges.

Under Virginia law,[14] the elements of a breach of contract claim are: (1) a legally

enforceable obligation of the defendant(s) to the plaintiff(s); (2) a breach of that obligation; and

(3) injury or damages caused by that breach.  Sunrise Continuing Care, LLC, v. Wright, 671

S.E.2d 132, 135 (Va. 2009).  In the present case, the Moving Defendants do not argue that

Plaintiff's Complaint fails to allege one or more of these elements; rather, they argue (a) that

Plaintiff's complaint is untimely because it was not filed within 1 year of the termination of the

---

[14] As noted in Part II, supra, the License Agreement and Guaranty provide for the application of Virginia law.

License Agreement, (Def. Joshi's Mot. Dismiss [Docket No. 36], at 2); (b) that Plaintiff

discharged them from the Guaranty by accepting a promissory note and by extending their time

to cure defaults, (Id. at 2-4); (c) that Plaintiff is improperly seeking the full amount of the

Guaranty jointly and severally, while each of the Moving Defendants agreed only to a certain

percentage, (Id. at 3-4); and (d) that Plaintiff's claim is barred by Defendant N.P.Amin's pending

bankruptcy proceeding, (Id. at 3).

      As previously noted, for purposes of a Rule 12(b)(6) motion, the Court looks to the

Complaint and Exhibits thereto to determine whether Plaintiff has sufficiently pled a claim upon

which relief can be granted.  See fn.5, supra.  Upon review of Plaintiff's Complaint and the

attached Exhibits, this Court is not persuaded by the Moving Defendants' arguments.

### a.  The Complaint and attached Exhibits do not support on their face the Moving Defendants' argument that Plaintiff's claims are time-barred.

      The Moving Defendants argue that Plaintiff terminated the License Agreement on

December 5, 2012, and therefore, Plaintiff's commencement of this action on December 9, 2013,

was untimely under the 1-year limitation contained within Section 25.6 of the License

Agreement.  (Def. Joshi's Mot. Dismiss [Docket No. 36], at 2).  Upon review of the pleadings,

this argument fails.

      First, the License Agreement and the Guaranty are separate contracts, and there is no

language in the Guaranty that incorporates the 1-year limitations period from Section 25.6 of the

License Agreement.  Section 25.6 of the License Agreement is not one of the sections of the

Lease Agreement that are expressly incorporated into the Guaranty.  In fact, application of the 1-

year limitations period would directly contradict the clear provision of the Guaranty that

provides that the Guarantors' obligation under the Guaranty "shall be a continuing, absolute, and

unconditional Guaranty and shall be in force and binding upon Guarantors until the Indebtedness

has been fully paid and all guaranteed obligations have been completed."

Second, even if the 1-year limitation in the License Agreement was incorporated into the Guaranty, upon review of the pleadings it appears that Plaintiff timely brought its claim. Plaintiff's Complaint states that the Lease Agreement terminated not on December 5, 2012, but rather, on December 20, 2012, which is the same date of termination provided for by the Notice of Default and Termination. Additionally, the December 5, 2012, Notice of Extension expressly stated that it **was not** a termination of the Lease Agreement, but rather, it served as notice that the Lease Agreement would be terminated in January 2013, if Defendant Praestans did not cure its default.

Accordingly, the Moving Defendants' argument that Plaintiff's claims should be dismissed as time-barred should be denied.[15]

### b. The Complaint and attached Exhibits **do not** support on their face the Moving Defendants' argument that Plaintiff's claims were waived by acceptance of the promissory note.

The Moving Defendants argue that Plaintiff waived its claims against them (1) by accepting the aforementioned promissory note on March 6, 2009, and (2) by extending their time to cure Defendant Praestans's defaults. (Def. Joshi's Mot. Dismiss [Docket No. 36], at 2-4). Neither argument is persuasive.

Both arguments are contrary to the plain language of the Guaranty, which expressly states that it shall remain in force until all indebtedness is cured. Additionally, under long-standing Virginia law, the mere act of extending a debtor's time to pay the debt does not extinguish that debt. Cobb v. Vaughan & Co., 126 S.E. 77, 81 (Va. 1925) (collecting cases). The Moving

---

[15] This finding should not preclude the Defendants from setting forth evidence, either in a summary judgment motion or at trial, that the Lease Agreement did, in fact, terminate on December 5, 2012. However, given the present procedural posture of this case, and the nature of the Motions to Dismiss, the Court may look only to the Complaint and the Exhibits attached thereto, and those pleadings do not support the Motions to Dismiss.

18

Defendants cite to Va. Code Ann. § 11-10, which provides: "A creditor may compound or compromise with any joint contractor or co-obligor, and release him from all liability on his contract or obligation, without impairing the contract or obligation as to the other joint contractors or co-obligors."  However, that statute does not provide that a promissory note executed by one debtor (in the present case, Defendant Praestans) serves to excuse the other debtors; on the contrary, it provides that a creditor may release one debtor from his obligation *without* impairing the obligations of other co-debtors.

Accordingly, the Moving Defendants' argument that Plaintiff waived its claims by accepting the promissory note and/or by extending Defendants' time to cure should be denied.[16]

> ### c. The Complaint and attached Exhibits <u>do not</u> support on their face the Moving Defendants' argument that Plaintiff's claims are limited by the Defendants' individual stakes in the LLC.

The Moving Defendants argue that each agreed only to guarantee "20% of his share in [the LLC]." (Def. Joshi's Mot. Dismiss [Docket No. 36], at 3).[17]  Additionally, they argue that they did not receive consideration sufficient to guarantee the entirety of the LLC's performance. (<u>Id.</u>).  These arguments are not persuasive.

First, according to the plain language of the Guaranty, each of the Individual Defendants agreed to "jointly and severally . . . guaranty to Country, that Guarantors will" pay the LLC's obligations under the License Agreement.  Where a guaranty agreement provides for joint and

---

[16] Again, this finding should not preclude the Defendants from setting forth evidence, either in a summary judgment motion or at trial, that the promissory note (which <u>is not</u> part of the present record) and/or the various notices of extension did, in fact, expressly waive Plaintiff's claims.  However, given the present procedural posture of this case, and the nature of the Motions to Dismiss, the Court may look only to the Complaint and the Exhibits attached thereto, and those pleadings <u>do not</u> support the Motions to Dismiss.

[17] Both Plaintiff and the Moving Defendants agree that Defendant Modi had only a 10% stake in the LLC.  (<u>See, e.g.</u>, Compl. [Docket No. 1], at ¶ 4 ("The members of [the LLC] are . . . Vijay Modi (10% interest)"); Def. Modi's Mot. Dismiss [Docket No. 37], at 1 ("[The LLC] Members respective interests of: . . . Vijay Modi 10%").  Nonetheless, Defendant Modi, whose Motion to Dismiss is substantially identical to that of Defendant Joshi, states: "Mr. Modi only agreed to guarantee 20% of his share in [the LLC]."  (Def. Modi's Mot. Dismiss [Docket No. 37], at 3).

several liability, "'each liable party is individually responsible for the entire obligation, but a paying party may have a right of contribution and indemnity from nonpaying parties.'" People's United Equip. Fin. Corp. v. Wright, 2011 U.S. Dist. LEXIS 73107, at *8 (E.D. Va. June 9, 2011) (quoting Black's Law Dictionary (9th ed. 2009)).  Thus, Plaintiff is not limited to seeking only individual shares of the LLC's indebtedness from each Individual Defendant, but rather, it may seek full damages against one or all of them.

Moreover, the Moving Defendants argument that the Guaranty (if read to allow Plaintiff to seek 100% recovery from any of them individually) was not supported by adequate consideration is directly contradicted by the plain language of the Guaranty itself, which provides that the Individual Defendants entered into the Guaranty "[t]o induce [Plaintiff] to enter into the License Agreement . . . and for other good and valuable consideration."

Accordingly, this Court recommends that the District Court deny the Moving Defendants' arguments that the Complaint should be dismissed because Plaintiff did not limit its suit to their individual shares of the LLC.[18]

### d.  The Complaint and attached Exhibits <u>do not</u> support the Moving Defendants' argument that Plaintiff's claims are barred by Defendant N.P.Amin's bankruptcy.

The Moving Defendants submit the docket sheet for Defendant N.P.Amin's pending Chapter 7 bankruptcy proceeding,[19] and argue that because the License Agreement "is subject to discharge in bankruptcy against guarantor Nayanesh P. Amin, and/or against all parties to the" Franchise Agreement, this proceeding serves to bar Plaintiff's claims against the Moving

---

[18] Again, this finding should not preclude the Defendants from setting forth evidence, either in a summary judgment motion or at trial, that Plaintiff did, in fact, expressly limit its ability to recover from each Individual Defendant only in relation to his personal share in the LLC.  However, given the present procedural posture of this case, and the nature of the Motions to Dismiss, the Court may look only to the Complaint and the Exhibits attached thereto, and those pleadings <u>do not</u> support the Motions to Dismiss.

[19] Defendant N.P.Amin filed for bankruptcy on December 31, 2012.  Bankr. Pet. No. 12-75311-FJS (E.D. Va.).  The Court can take judicial notice of this proceeding.

Defendants.  (Def. Joshi's Mot. Dismiss [Docket No. 36], at 3).  Reading their Motions to Dismiss liberally, this Court construes this argument as applying to both the License Agreement (to which Defendant N.P.Amin <u>was not</u> a signatory) <u>and</u> the Guaranty (to which Defendant N.P.Amin <u>was</u> a signatory).  However, this argument too is not persuasive.

The express terms of the Guaranty provide that the obligations spelled out therein are not discharged by bankruptcy.  Thus, Defendant N.P.Amin's bankruptcy does not even excuse him from the Guaranty; and even if it did excuse him, that alone would not excuse the other Defendants.  <u>See</u> 11 U.S.C. § 524(e) ("Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."); <u>cf.</u> <u>In re A.P.I., Inc.</u>, 331 B.R. 828, 867 (D. Minn. Bankr. 2005) ("'In a typical Chapter 11 proceeding, . . . 'discharge' does not result in the extinguishment of the underlying debt but merely releases the debtor from personal liability.'") (quoting <u>Star Phoenix Min. Co. v. West Bank One</u>, 147 F.3d 1145, 1147 n.2 (9th Cir. 1998).

Accordingly, this Court recommends that the District Court deny Moving Defendants' argument that Defendant N.P.Amin's pending bankruptcy proceedings bar Plaintiff's claims.

### e.  Summary

For the reasons set forth above, to the extent that the Moving Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted, this Court should recommend that the Motions to Dismiss, [Docket Nos. 36, 37, and 40], be **DENIED**.

## D.  Plaintiff <u>did not</u> fail to join an essential party.

The Moving Defendants appear to argue that Plaintiff "fail[ed] to join Nayanesh P. Amin as an essential party."  (Def. Joshi's Mot. Dismiss [Docket No. 36], at 3).  The Court is puzzled

by this allegation, as the Complaint plainly names Defendant N.P.Amin as a defendant.  (See

Compl. [Docket No. 1], at 1-2).[20]

This part of the Motions to Dismiss clearly fails.


**II.      CONCLUSION**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

**HEREBY RECOMMENDED**:

1. That Defendant Ramesh Joshi's Motion to Dismiss, [Docket No. 36], be **DENIED**, as

   set forth above;

2. That Defendant Vijay Modi's Motion to Dismiss, [Docket No. 37], be **DENIED**, as

   set forth above; and

3. That Defendant Sanjay M. Amin's Motion to Dismiss, [Docket No. 40], be **DENIED**,

   as set forth above.



Dated: June 20, 2014                          /s/ Leo I. Brisbois
                                              Leo I. Brisbois
                                              U.S. MAGISTRATE JUDGE


**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation
by filing with the Clerk of Court, and serving all parties **by July 7, 2014**, a writing that

---

[20] As this Court noted in Part I, supra, Defendant N.P.Amin has been dismissed from this case because Plaintiff
failed to prosecute its case against him and failed to comply with an Order of this Court that it do so.  (See Order
[Docket No. 12] (instructing Plaintiff to advise the Defendants of their obligation to answer or file responsive
pleadings); Report & Recommendation [Docket No. 38] (recommending that Defendant N.P.Amin be dismissed
because of Plaintiff's failure to prosecute and failure to comply with the Order at Docket No. 12); Order [Docket
No. 43] (adopting R&R))

specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within **fourteen (14) days** of service thereof.  Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.